

February 11, 2022

**VIA ECF**

Hon. Vernon S. Broderick
U.S. District Judge
U.S. District Court, Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 415
New York, New York 10007

**Lisa A. Ferrari**
Direct Phone   212-297-2699
Direct Fax       646-588-1459
lferrari@cozen.com

APPLICATION GRANTED
SO ORDERED
VERNON S. BRODERICK
U.S.D.J.   02/14/2022

The Clerk of Court is directed to maintain the documents filed at docket entry 23 under seal.

     Re:    *CT Espresso LLC v. Lavazza Premium Coffees Corp. et al.*,
            No. 1:22-cv-377-VSB: Renewed Consent Motion to Seal

Dear Judge Broderick:

We represent Defendants Lavazza Premium Coffees Corp. and Luigi Lavazza S.p.A. (together, "Lavazza") in the above-referenced action.

Having reviewed the Court's guidance in the February 3, 2022, Order (ECF No. 19) denying Lavazza's request to seal, and after due consideration of the important policy goals of public access to judicial documents, Lavazza submits this renewed request to seal based upon the accompanying Declaration of Alfredo D'Innocenzo and the argument set forth below.

Lavazza has reduced the redactions requested, which now solely concern the provision in the Settlement Agreement concerning the importation and sale of gray market goods (namely, § 2(d) of the Settlement Agreement and ¶¶ 28-29[1] and 93-94 of plaintiff's Complaint). As explained below, Lavazza would be at a competitive disadvantage in its dealings with resellers and in its attempts to control gray market sales if the provisions of its agreements with individual resellers concerning the importation and sale of gray market goods were made public.

<u>The Applicable Law</u>

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *U.S. v. Erie County,* 763 F.3d 235, 238-39 (2d Cir. 2014). "Indeed, the common law right of public access to judicial documents is said to predate even the Constitution itself." *Id.* at 239.

The presumption of access to judicial documents is not absolute, however, and may be overcome where an application is narrowly tailored to serve factors that legitimately counsel against

---

[1] It is noted that plaintiff's Complaint contains some typographical errors in the paragraph numbers and that there are two sets of paragraphs numbered "28" and "29." The sealing request refers to ¶¶ 28-29 appearing on page 5 of the Complaint, as shown in the highlighted version of the Complaint submitted under seal herewith.

Hon. Vernon S. Broderick
February 11, 2022
Page 2

_____

disclosure and outweigh the presumption in favor of public access.  *See Lugosch v. Pyramid Co, of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

The Second Circuit has articulated a three-step process for determining whether documents should be sealed in light of the common law right of access.  A court must first conclude that the documents at issue "are indeed 'judicial documents'" to which the common law right attaches.  *See id.*  Second, after determining that the documents are judicial documents and that the "common law presumption of access attaches," the court must "determine the weight of that presumption."  *Id.*  When a document plays a role in a court's adjudication of litigants' substantive rights, the presumption is strong, but "[a]s one moves along the continuum, the weight of the presumption declines."  *Id.*  Courts must exercise judgment to determine the weight to be accorded to "statements or documents in the middle of the continuum," and that judgment "can be informed in part by tradition."  *U.S. v. Amodeo (Amodeo II),* 71 F. 1044, 1049-50 (2d Cir. 1995).

Third, the court must balance any "competing considerations" against the weight of the presumption of access, *Lugosch,* 435 F.3d at 120, including "the degree to which the subject matter is traditionally considered private rather than public" and "the privacy interests of those resisting disclosure."  *Rensselaer Polytechnic Institute v. Amazon.com, Inc.* 2019 WL 2918026, *2 (N.D.N.Y. June 18, 2019) (quoting *Amodeo II*, 44 F.3d at 1050, 1051).

Specific, narrowly tailored portions of contracts regarding proprietary commercial information may qualify for sealing under the case law if disclosure would harm a litigant's ability to negotiate with third parties, subject a party "to 'financial harm,'" or harm a litigant's "competitive standing."  *See, e.g., Standard Inv. Chartered, Inc. v. Financial Industry Regulatory Authority, Ind*. 347 Fed.Appx. 615, 617 (2d Cir. 2009) (upholding sealing based upon defendant NASD's contention that "an outsider with knowledge of the final terms . . . [of parties' deal] could . . . use that information to deduce NASD's negotiation tactics"; stating that "[d]isclosure could cause [a litigant] significant competitive disadvantage") (internal citation omitted); *Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.,* 26 F. Supp.2d 606, 608-08, 614 (S.D.N.Y. 1998) (granting request to seal rates paid by cable operators to HBO for programming where public access to such information "would give their competitors a bargaining advantage in negotiating with HBO and . . . impede the cable operator defendants' ability effectively to bargain with suppliers of cable programming other than HBO"); *Seoul Viosys Co., Ltd. v. P3 International Corporation* 2018 WL 4759744, *13 (S.D.N.Y. Sept. 30, 2018) (approving redactions of portions of confidential settlement agreements and other confidential business information "that could harm Plaintiff's competitive standing").

In essence, courts may deny access to records that contain "sources of business information that might harm a litigant's competitive standing."  *See, e.g., In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (citing *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 598 (1978)); *see also EFCG, Inc. v. AEC Advisors, LLC*, No. 19-cv-8076, 2020 WL 7121855, at *1 (S.D.N.Y. Nov. 9, 2020) (granting plaintiff's request to seal an order containing "confidential, commercially sensitive information which might harm [the plaintiff's] competitive standing vis-à-vis defendants and other competitors."*).*

<u>The Basis for Sealing in this Case</u>

Here, the Complaint, and the Settlement Agreement attached thereto as Exhibit A, are necessarily "judicial documents" to which the right of access attaches.  As set forth above, courts in this district regularly grant requests to seal parties' agreements where disclosure to third parties would harm a litigant's competitive standing.

Hon. Vernon S. Broderick
February 11, 2022
Page 3

_____

Moreover, there are "competing considerations" against the presumption of access in this case arising from the threat of competitive harm to Lavazza in its ability to negotiate with third parties, namely, the resellers of Lavazza products, and enter agreements concerning the importation of gray market goods into the United States.

Lavazza has submitted in support of this sealing request the Declaration of Alfredo D'Innocenzo ("D'Innocenzo Dec."), LPCC's Senior Vice President, Away from Home Sales, who identifies the challenges faced by Lavazza in curtailing the influx of gray market goods into the United States by resellers who purchase Lavazza products outside the U.S. and sell the products on Amazon at sharply discounted prices.  These practices, which are believed to cause Lavazza and its authorized resellers lost revenues in the millions of dollars each year, undermine Lavazza's distribution network in the U.S. and Lavazza's reputation with its distributors and end-user customers.  *See* D'Innocenzo Dec. ¶¶ 4-7.  Lavazza is unable to maintain different prices in different markets; its authorized resellers are unable to compete with unauthorized resellers on price; and Lavazza's reputation is harmed by damaging the trust that distributors and end customers have in the brand.  *Id.* ¶¶ 5-6.

As set forth in the D'Innocenzo Dec., Lavazza has sought to address these challenges through an enforcement strategy which includes entering agreements with resellers which seek to limit the importation of gray market goods and require resellers to purchase products exclusively from LPCC.  *See id.* ¶ 8.  If the provisions of Lavazza's agreements with resellers were opened to public view, it would impair Lavazza's ability to control gray market goods because it would open up Lavazza's negotiations with one specific reseller to scrutiny by other resellers and would allow other resellers to seek a competitive edge based upon Lavazza's resolution with this particular reseller.  *Id.* ¶¶ 9-10; *cf. Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978) (noting that courts have refused to allow court records to serve "as sources of business information that might harm a litigant's competitive standing").

Just as the NASD litigants in *Standard Inv. Chartered, Inc. v. Financial Industry Regulatory Authority, Ind.* 347 Fed.Appx. 615, 617, and the HBO and cable operators in *Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.,* 26 F. Supp.2d 606, 608-08, 614, would be impeded in their ability to negotiate with third parties if certain provisions of their agreements with specific parties were made public, so too would Lavazza be competitively disadvantaged if its agreement with CT Espresso concerning gray market sales were disclosed.  Other resellers with whom Lavazza sought to enter exclusive agreements would be able to use Lavazza's agreement in this specific case as the basis for negotiating more favorable provisions regarding gray market goods, which would competitively harm Lavazza – as well as its innocent, authorized resellers -- because it would result in lower revenues for Lavazza and those resellers who use authorized distribution channels.  D'Innocenzo Dec. ¶ 10.

<u>Lavazza Has Narrowly Tailored its Sealing Request</u>

Further, this application has been narrowly tailored to seal only that information directly related to the issue of gray market sales.  Following the Court's denial of the parties' requests to seal (ECF Nos. 12, 19), Lavazza reduced its redaction request to a single provision of the Settlement Agreement – Section 2(d) – and to four paragraph(s) of plaintiff's Complaint (¶¶ 28-29, 93-94). These proposed redacted paragraphs directly concern the gray market issues detailed above that would reveal the parties' agreement concerning this issue and harm Lavazza's ability to negotiate with third parties concerning the importation of gray market goods.  As a result, granting this

Hon. Vernon S. Broderick
February 11, 2022
Page 4

_____

application will protect Lavazza's competitive standing without impeding the presumption of public access.

*** 

Accordingly, it is respectfully submitted that this narrowly tailored request for redaction allows the Court to make the "specific, on the record findings" required for judicial documents to be sealed. Order, at 2.  Because the risk of competitive harm to Lavazza from the provisions concerning gray market goods greatly outweighs the presumption of public access, Lavazza respectfully asks the Court to maintain under seal the unredacted versions of the Complaint and Exhibit A submitted today by Lavazza, and to allow for the sealing of Section 2(d) of the Settlement Agreement and paragraphs 28-29 and 93-94 of the Complaint.

Counsel for CT Espresso has advised the undersigned that it does not oppose Lavazza's request to seal.

We thank the Court for its consideration of this request.

Respectfully submitted,

COZEN O'CONNOR

*/s/ Lisa A. Ferrari*

By:     Lisa A. Ferrari (LF8081)

Cc:  Counsel of Record *(via ECF)*