UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

CT ESPRESSO LLC,

                        Plaintiff,

v.

LAVAZZA PREMIUM COFFEES CORP.;
LUIGI LAVAZZA S.P.A.; and
JOHN DOES 1-10,

                        Defendants.

-------------------------------------------------------------- x

Civil Action No. 22-cv-377 (VSB)

**FIRST AMENDED COMPLAINT
AND JURY TRIAL DEMAND**

*Electronically Filed*

Plaintiff CT Espresso LLC ("Plaintiff" or "CT"), by and through its counsel, for its First Amended Complaint against Lavazza Premium Coffees Corporation ("Lavazza USA"), Luigi Lavazza S.p.A. ("Lavazza Italy") and John Does 1-10 ("Doe Defendants") (collectively, "Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1.      Plaintiff brings this action against Defendants for breach of contract on the basis of Defendants' willful breach an agreement entered into by and between Plaintiff and Defendants relating to the resale of Lavazza-brand coffee products ("Lavazza Products").

2.      On or about September 23, 2020, the Parties entered into a written agreement to resolve a dispute relating to the purchase and resale of Lavazza Products ("the Agreement"), including Lavazza's submission of certain reports of intellectual property infringement to Amazon.com ("Amazon").

3.      Among other things, the Agreement provided that Defendants would forever cease filing any and all complaints or notices to Amazon. Defendants knowingly and intentionally disregarded this commitment and breached the Agreement.

4.      In early November 2021, Defendants purchased from Plaintiff a number of Lavazza Products.  After receiving those products and confirming their authenticity, Defendants submitted at least seven false reports to Amazon stating that Plaintiff was selling "counterfeit" Lavazza Products.  After being challenged by Plaintiff and their counsel, Defendants hastily attempted to retract the reports, but the damage was already done.  Amazon suspended Plaintiff's account during the busiest time of the year and, even after obtaining reinstatement of its account, Plaintiff is effectively precluded from listing Lavazza Products for sale.

5.      Accordingly, Plaintiff seeks monetary damages and injunctive relief for Defendants' breach of contract, defamation and trade libel.

## PARTIES

6.      Plaintiff is a limited liability company organized and existing under the laws of the State of Connecticut, with a place of business at 10300 NW 53rd Street Sunrise, Florida 33351.

7.      Plaintiff is owned by two individuals: Rosario Minnocci and Luciana Minnocci. Each of these individuals is a citizen of and resides in the State of Florida, with an address at 3005 Portofino Isle, Unit B3, Coconut Creek, FL 33066.

8.      On information and belief, Defendant Lavazza USA is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 120 Wall Street, Suite 27, New York, New York 10005.

9.      On information and belief, Defendant Lavazza Italy is a business entity organized and existing under the laws of Italy, with a principal place of business at Via Bologna 32, 10152, Turin Italy.

10.      On information and belief, Defendant Lavazza USA is a subsidiary of Lavazza Italy.

## JURISDICTION AND VENUE

11.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a), as the parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12.     Defendants are subject to general and specific jurisdiction in this Court because, *inter alia*, they conduct business in the District and have committed at least some of the acts complained of herein within this District.  Defendant Lavazza USA is registered to do business in the State of New York.

13.     On information and belief, Defendants sell large quantities of various products, including coffee products, to customers in New York, engage distributors based in New York, maintain an interactive website accessed by residents of New York, and otherwise avail themselves of the privilege of doing business in the State of New York.

14.     Each of the Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District and this action arises from those activities.

15.     In addition, Paragraph 7 of the Agreement provides that any dispute arising under the Agreement shall be resolved in this Court, and Defendants expressly consented to the jurisdiction of and venue in this Court.

16.     Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

17.     Venue is also proper with respect to Defendant Lavazza Italy under 28 U.S.C. § 1391(c).

## BACKGROUND FACTS

18.     Defendant Lavazza Italy is in the business of manufacturing and distributing the Lavazza Products.

19.     Defendant Lavazza Italy is the registrant of U.S. Trademark Serial No. 1201336 for LAVAZZA ("the LAVAZZA Registration").

20.     On information and belief, Defendant Lavazza USA is a distributor of Lavazza Products in the United States.

21.     Plaintiff is in the business of lawfully acquiring and re-selling various consumer products for a profit, including coffee, espresso and related products.

22.     Plaintiff resells products through various channels, including through an Amazon storefront.

23.     Since its formation, Plaintiff has served hundreds of thousands of customers through its Amazon storefront, "RLM Coffee".

24.     As detailed below, Defendants' illegal actions have irreparably damaged, and threaten to destroy, Plaintiff's successful business.

## THE 2020 AGREEMENT

25.     The Parties have a lengthy working relationship. For nearly two decades, Plaintiff was one of Defendants' largest distributors in the Northeast region.

26.     During 2018 and 2019 Plaintiff purchased Lavazza Products directly from Defendants, which Plaintiffs resold through various channels, including its online store and the Amazon Marketplace.

27.     Thereafter, a dispute arose relating to the payment of certain invoices, as well as Plaintiff's alleged sale of "gray market" products and alleged infringement of the LAVAZZA Registration.

28.     In September 2020, the Parties reached agreement on the terms of a settlement of

their outstanding disputes and, on or about September 23, 2020, executed the Agreement.

29.     A true and correct copy of the Agreement is attached as **Exhibit A**.

30.      As pertinent here, the Agreement: (1) expressly authorized Plaintiff to resell

Lavazza Products; and (2) provided that Defendants would forever cease filing any and all

complaints to Amazon or other online marketplaces regarding Plaintiff.

31.     

32.

33.     Paragraph 2(f) of the Agreement provides as follows:

> No Further Action Against CT Espresso. Lavazza agrees that it will
> file no further complaints, actions, or other adverse notices relating
> to the matters that are the subject of this Agreement against CT or
> its online outlets, including RLM Coffee and including such
> complaints or notices to Amazon, so long as CT fully complies with
> the terms of this Agreement.

(Exhibit A, Par. 2(f)).

34.     The above Paragraph 2(f) of the Agreement was a critical provision, and Plaintiff would never have been induced to enter into the Agreement without this commitment by Lavazza.

35.     As discussed below, Defendants knowingly and intentionally disregarded this commitment and breached the Agreement.

## PLAINTIFF AND THE AMAZON MARKETPLACE

36.     As noted above, Plaintiff has sold goods, *inter alia*, on online marketplaces, including on Amazon.

37.     On information and belief, Amazon is the world's largest online retailer.

38.     Amazon's online e-commerce platform allows for third-parties, like Plaintiff, to sell products on its website.

39.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third-parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

40.     Since 2014, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

41.     Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product. Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

42.     As noted, Plaintiff operates an Amazon storefront under the name "RLM Coffee."

43.     A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through their storefront.

44.     Once Plaintiff acquires products from reputable sources, Plaintiff resells the same products on Amazon at a profit.

45.     At all times, Plaintiff has lawfully acquired all products it sells on Amazon.

46.     Plaintiff has invested significant efforts building a successful and reputable Amazon storefront.

47.     Plaintiff's Amazon storefront has amassed numerous reviews and holds a 99% positive lifetime customer rating.

48.     A small sample of Plaintiff's recent reviews are shown below:



49.     Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury to Plaintiff.

**DEFENDANTS SUBMIT FALSE REPORTS TO AMAZON**

50.     On information and belief, Defendants seek to increase their profits by controlling the distribution and pricing of their products, including the Lavazza Products, through unlawful means.

51.     Defendants disregarded the Agreement in order preclude Plaintiff from reselling genuine Lavazza Products on Amazon by false allegations of intellectual property infringement and defamation.

52.     On information and belief, the purpose of these false complaints and defamatory statements was to prevent Plaintiff from selling genuine Lavazza Products on Amazon.

53.     On information and belief, the purpose of these false complaints was to damage Plaintiff's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

54.     Because Plaintiff sells only genuine products through its Amazon storefront, which Plaintiff is expressly authorized to sell by the Agreement, Defendants have no legitimate intellectual property claim(s) against Plaintiff.

55.     It is well-known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

56.     As one Amazon expert explained:

In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notices of claimed infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the infringement claim is false, Amazon considers it valid and actionable.

***Unfortunately, word is out among potential infringement claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.

They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.

*See* Chris McCabe, *Bogus Amazon Infringement Claims: Copyright, Trademarks and Patents*,

WebRetailer, https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/

(last visited December 28, 2021) (emphasis added).

57.     On information and belief, Defendants were, at all relevant times, aware of the

foregoing Amazon policy with respect to reports of intellectual property infringement.

58.     On information and belief, Defendants were, at all relevant times, aware that

Amazon will act on reports that a product is "counterfeit," regardless of the truth of the report.

59.     The Lanham Act defines a "counterfeit" as "a spurious mark which is identical

with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

60.     Defendants filed complaints with Amazon that alleged that Plaintiff was selling

"counterfeit" Lavazza Products.

61.     Defendants knew, or should have known, that such allegations were false.

62.     Each complaint submitted to Amazon was signed under penalty of perjury by an

employee or agent of Defendants.

63.     For example, when submitting an infringement report to Amazon, an intellectual

property rights owner must read and accept the following statements:

> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."
>
> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

Report Infringement, https://www.amazon.com/report/infringement (last visited December 28,

2021).

64.     On information and belief, Cataldo De Franco, Defendants' Senior Director of e-commerce in North America, signed and submitted the false intellectual property complaints described below.

65.     Once confirmed, Mr. De Franco and all other individual(s) responsible for the false intellectual property complaints described below will be added as defendants in this action.

66.     Specifically, in early November 2021, Mr. De Franco, on behalf of Defendants, placed an order through Plaintiff's Amazon storefront for a number of Lavazza Products ("Test Purchase").

67.     On information and belief, Defendants received the Test Purchase, examined the products and confirmed their authenticity.

68.     Nevertheless, Defendants proceeded to submit at least seven false reports to Amazon stating that Plaintiff was selling "counterfeit" Lavazza Products.

69.     For example, on or about November 8, 2021, Plaintiff received a notice from Amazon stating as follows:

Hello,

We received a report from a rights owner that you are listing counterfeit products. Sellers on Amazon.com are not allowed to create listings or detail pages for counterfeit goods.

We removed the content listed at the end of this email. We may let you list this product again if we receive a retraction from the rights owner. Their contact information can be found below.

Lavazza Premium Coffee Corp.
us.customerservice@lavazza.com

How do I reactivate my listing?
Please visit the Account Health page in Seller Central (https://sellercentral.amazon.com/performance/dashboard?ref=ah_em_nr) to appeal this listing deactivation. Please click on the "Appeal" link next to the listing in the "Product and Policy Violations" section on the account health page.

If the rights owner does not retract their complaint, or you do not provide supporting information, we may provide your contact information to the rights owner upon their request.

We consider allegations of counterfeit a serious matter and your account is under review. If we receive more complaints about your listings, we may not allow you to sell on Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

ASIN: B00NH0FF9Q
Title: LAVAZZA POINT -AROMA CLUB ESPRESSO 200 CARTRIDGES


Infringement type: Counterfeit
Trademark: 1201336
Complaint ID: 9171868241

Sincerely,

Seller Performance Team
https://www.amazon.com
Amazon.com

70.     The above report relates to a Lavazza Product, which is referenced by its Amazon Standard Identification Numbers ("ASIN").

71.     The Lavazza Product identified as "counterfeit" in the above report was genuine.

72.     The Lavazza Product identified as "counterfeit" in the above report was manufactured and distributed by Defendants.

73.     As noted above, prior to filing the above report, Defendants performed the Test Purchase and, on information and belief, knew that the product was not counterfeit.

74.     On information and belief, Defendants' allegation that the above Lavazza Products were counterfeit was knowingly false and made in bad faith.

75.     In total, Defendants submitted at least *seven complaints* to Amazon, each resulting in the suspension of Plaintiff's ability to sell Lavazza Products.  These complaints to Amazon are listed below ("Amazon Complaints"):

| ASIN | Allegation | Complaint ID |
|:---:|:---:|:---:|
| B00NH0FF9Q | Counterfeit | 9171868241 |
| B00NH0FKU0 | Counterfeit | 9171938591 |
| B0068OF5RU | Counterfeit | 9171950091 |
| B003QNV480 | Counterfeit | 9171912481 |
| B07V2GZRG8 | Counterfeit | 9172036181 |
| B008L7T47Y | Counterfeit | 9173275201 |
| B00CD8LO5W | Counterfeit | 9173265631 |

76.     The Lavazza Products identified as "counterfeit" in each of the above reports were genuine.

77.     The Lavazza Products identified as "counterfeit" in each of the above reports were manufactured and distributed by Defendants.

78.     As noted above, prior to filing the above reports, Defendants performed the Test Purchase and, on information and belief, knew that the products were not counterfeit.

79.     On information and belief, Defendants' allegations that the above Lavazza Products were counterfeit were knowingly false and made in bad faith.

80.     On information and belief, Defendants have an established history of filing false "counterfeit" reports with Amazon.

81.     On information and belief, Defendants regularly use the intellectual property reporting tools provided by Amazon, such as Brand Registry and Project Zero, to stifle legitimate competition and manipulate the pricing for Lavazza Products on Amazon.

82.     In 2019, another Amazon seller brought suit against Defendants for engaging in these same activities, namely, including filing more than a dozen allegedly false "counterfeit" reports to Amazon. *See LY Berditchev Corp. v. Lavazza Premium Coffees Corp. et al.*, No. 2:19-cv-20073 (D.N.J. filed Nov. 12, 2019).

**DEFENDANTS TACITLY ACKNOWLEDGED THEIR WRONGDOING**

83.     On or about November 9, 2021, counsel for Plaintiff contacted counsel for Defendants by e-mail and demanded, *inter alia*, withdrawal of the Amazon Complaints.

84.     After stalling for a week while Plaintiff's listings were suspended, Defendants made an insincere settlement offer, which it then withdrew before Plaintiff could even respond.

85.     On or about November 18, 2021, counsel for Plaintiff sent Defendants a letter once again demanding withdrawal of the Amazon Complaints, as well as compensation for the damage caused.

86.     On or about November 24, 2021, Defendants submitted retractions of the above Amazon complaints to Amazon, thus, acknowledging their wrongdoing.

87.     In attempt to deflect from their wrongdoing, and avoid adverse action by Amazon, Defendants represented to Amazon that, "[a]fter further evaluation of a second level check we establish that the item we purchased from this seller is a Legit Lavazza Product and can be sold by the SELLER RLM[.]"

88.     However, on information and belief, Defendants knew from the outset that the products acquired from the Test Purchase were "Legit Lavazza Product" and knowingly submitted false reports.

**HARM TO PLAINTIFF**

89.     As a result of the above false rights complaints, Plaintiff's listings identified in the Amazon Complaints were suspended, resulting in an immediate loss of revenue.

90.     It is well-known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost. That is precisely what happened here.

91.     Thereafter, Amazon suspended Plaintiff's Amazon account, resulting in a loss of all selling privileges.  Although Plaintiff was subsequently able to obtain reinstatement of its Amazon account, the damage was irreparable.

92.     Amazon removed Plaintiff's ability to sell virtually all Lavazza Products.

93.     As result of Defendants' false complaints, Plaintiff's inventory of Lavazza Products has aged and is unsaleable.

94.     As result of Defendants' false complaints, Plaintiff's performance metrics were irreparably damaged.

95.     It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

96.     Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics.

97.     Defendants' false complaints and reviews have damaged Plaintiff's metrics and lose the "buy box" going forward.

## COUNT I – BREACH OF CONTRACT

98.     Plaintiff realleges and incorporates all previous paragraphs.

99.     In 2020, Plaintiff entered into the Agreement with Defendants.

100.    The Agreement between Plaintiff and Defendants is a valid and enforceable contract.

101.    Plaintiff performed all its obligations under the Agreement.

102.    ███████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

103.    ██████████████████████████████████████

██████

104.    Paragraph 2(f) of the Agreement provides that "Lavazza agrees that it will file no further complaints, actions or other adverse notices related to the matters that are the subject of this Agreement against CT or its online outlets, including RLM Coffee and including such complaints or notices to Amazon, so long as CT fully complies with the terms of this Agreement."

105.    As set forth *supra*, Defendant breached the Agreement by filing complaints with Amazon against Plaintiff.

106.    As a result of the foregoing breach, Plaintiff has suffered lost profits, out-of-pocket costs and expenses.

107.    As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff suffered damages in an amount to be determined at trial, plus pre-judgment interest.

## COUNT II – DEFAMATION

108.    Plaintiff realleges and incorporates all previous paragraphs.

109.    Defendants published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff sold "counterfeit" Lavazza Products.

110.    Plaintiff did not sell counterfeit Lavazza Products.

111.    Defendants' false statements were injurious to Plaintiff's business because they caused Amazon to suspend Plaintiff's selling privileges related to Lavazza Products.

112.    Defendants' false statements were injurious to Plaintiff's business because they caused Amazon's and Plaintiff's customers to avoid purchasing products from Plaintiff.

113.    On information and belief, Defendants were, at a minimum, negligent in making the false statements to Amazon because, among other things, Defendants knew that Plaintiff sells genuine products.

114.    Defendants' false statements are not protected by any privilege.

115.    Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to Amazon and Plaintiff's customers.

116.    False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

117.    Here, Defendants published statements that Plaintiff was engaged in trademark counterfeiting, which is a criminal offense.

118.    Defendants' false statements constitute defamation per se.

119.    Additionally, Plaintiff incurred special harm, including, but not limited to, suspension from selling Lavazza Products and damage to its relationship with Amazon and its customers.

120.    Whether by defamation per se or by special harm, Plaintiff has suffered injury as Plaintiff's selling privileges related to Lavazza Products have been suspended and Plaintiff has lost sales of Lavazza Products and other products.

121.    Plaintiff is entitled to damages, costs, and fees as allowed by law.

122.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT III – TRADE LIBEL

123.    Plaintiff realleges and incorporates all previous paragraphs.

124.    Defendants knowingly published false and derogatory statements regarding Plaintiff's products.

125.    Specifically, Defendants published false and materially derogatory statements that Plaintiff was selling counterfeit Lavazza Products.

126.    Defendants' statements that Plaintiff was selling counterfeit Lavazza Products were calculated to prevent others (including Amazon and Amazon's customers) from doing business with Plaintiff and interfered with Plaintiff's business relationships with these parties.

127.    As discussed above, on information and belief, Defendants knew that submitting false complaints to Amazon would cause Amazon to suspend Plaintiff's product listings.

128.    Defendants' false and derogatory statements to Amazon were a substantial factor in inducing these parties not to conduct business with Plaintiff.

129.    Plaintiff suffered special damages as a result of Defendants' statements in the form of lost dealings.

130.    As a result of Defendants' false reports, Plaintiff's product listings were removed from Amazon resulting in a direct and immediate loss in revenue.

131.    Prior to Defendants' false reports, Plaintiff earned profits of approximately $10,000 per week due to its sales of Lavazza Products on Amazon.  Thus, because Defendants' false reports directly caused Amazon to suspend Plaintiff's selling privileges related to Lavazza

Products, Plaintiff has suffered at least $300,000 in lost profits to date as a direct and proximate result of Defendants' false reports.

132.    In addition, prior to Defendants' false reports, Plaintiff purchased Lavazza Products for the purpose of reselling those products on Amazon.  However, because Defendants' false reports directly caused Amazon to suspend Plaintiff's selling privileges related to Lavazza Products, Plaintiff has been unable to sell its inventory of Lavazza Products prior to the expiration date of these products.  Thus, Plaintiff has suffered at least $25,000 in damages due to inventory that it can no longer sell on Amazon.

133.    Plaintiff is entitled to damages, costs, and fees as allowed by law.

134.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT
## AND BUSINESS RELATIONS

135.    Plaintiff realleges and incorporates all previous paragraphs.

136.    Plaintiff has had an advantageous business relationship with Amazon, which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

137.    Plaintiff is also in a contractual relationship with Amazon.

138.    At all relevant times, Defendants were aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

139.    At all relevant times, Defendants were aware of the terms and conditions of Amazon, as well as the advantageous business relationship that comes with being an Amazon seller.

140.    Defendants intentionally and improperly interfered with Plaintiff's advantageous and contractual relationship with Amazon by complaining, in writing, to Amazon, that Plaintiff was selling counterfeit products.

141.    Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship and contract with Amazon.

142.    Defendants intended to cause Amazon to suspend Plaintiff's ability to sell Lavazza Products on Amazon and therefore interfere with the business relationship Amazon had with Plaintiff.

143.    Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff's ability to sell Lavazza Products on Amazon.

144.    Defendants' accusations of counterfeiting, made directly to Amazon, were for the improper purpose of suppressing competition.

145.    Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listings of Lavazza Products to be suspended.

146.    Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused the suspension of Plaintiff's selling privileges.

147.    The intentions of Defendants are demonstrated by the fact that Defendants performed test purchases prior to alleging that the products sold by Plaintiff were counterfeit.

148.    The intentions of Defendants are demonstrated by the fact that Defendants subsequently acknowledged that the products sold by Plaintiff were "Legit Lavazza Product."

149.    Defendants' accusations were false and were made maliciously and with ill will.

150.    Plaintiff has been damaged by suspension of these listings by losing revenue related to Lavazza Products.

151.     Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

152.     Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment as follows:

a)  Preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from filing complaints with Amazon and any other e-commerce platform, with respect to Plaintiff and Lavazza Products offered for sale, or sold, by Plaintiff.

b)  An award of all damages that Plaintiff has suffered as a result of Defendants' breach of contract;

c)  An award of all damages that Plaintiff has suffered as a result of Defendants' defamation;

d)  An award of all damages that Plaintiff has suffered as a result of Defendants' trade libel;

e)  An award of all damages that Plaintiff has suffered as a result of Defendants' tortious interference;

f)  An award of all costs and fees, including attorneys' fees, incurred in this Action; and

g)  Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated:  July 5, 2022
       New York, New York

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP

By:  *s/ Mark Berkowitz*
    Mark Berkowitz
    Sandra A. Hudak
    1350 Broadway
    New York, NY  10018
    Tel.:    (212) 216-8000
    Fax:    (212) 216-8001
    E-mail:  mberkowitz@tarterkrinsky.com
            shudak@tarterkrinsky.com

*Attorneys for Plaintiff*