```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
CT ESPRESSO LLC,                         :
                                         :
                         Plaintiff,      :
                                         :   22cv377 (DLC)
           -v-                           :
                                         :   OPINION AND ORDER
LAVAZZA PREMIUM COFFEES CORP., LUIGI     :
LAVAZZA S.P.A., and JOHN DOES 1-10,      :
                                         :
                         Defendants.     :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
Sandra Adele Hudak
Mark Berkowitz
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018

For defendants:
Lisa Ann Ferrari
Keren Goldberger
Cozen O'Connor
3 WTC
175 Greenwich Street
56th Floor
New York, NY 10006

DENISE COTE, District Judge:

CT Espresso LLC ("CT Espresso") has moved for reconsideration of the dismissal of its claim for defamation. For the following reasons, CT Espresso's motion is granted.

**Background**

The Court assumes familiarity with its Opinion of September 28 in this action, and summarizes only the facts necessary to resolve this motion.  CT Espresso LLC v. Lavazza Premium Coffees Corp., 22CV00377, 2022 WL 4538339 (S.D.N.Y. Sept. 28, 2022). Luigi Lavazza, S.p.A. manufactures coffee products, which Lavazza Premium Coffees Corp. (together "Lavazza") distributes in the United States.  Pursuant to an agreement with Lavazza, CT Espresso purchases and resells Lavazza's coffee products through its Amazon.com ("Amazon") storefront, RLM Coffee.

The First Amended Complaint ("FAC") pleads the following facts.  In November of 2021, the defendants placed an order from the RLM Coffee storefront in order to confirm the authenticity of the Lavazza-branded coffee being sold there.  The coffee was authentic.  Nevertheless, the defendants submitted seven reports to Amazon (the "Amazon Complaints") asserting that RLM Coffee was selling "counterfeit" Lavazza products.  CT Espresso then contacted the defendants to demand withdrawal of the Amazon Complaints.  The defendants made a settlement offer, which they then quickly withdrew.  CT Espresso again demanded withdrawal of the Amazon Complaints, as well as compensation for damage caused.  On November 24, 2021, the defendants withdrew the Amazon Complaints, explaining to CT Espresso that they had

verified the authenticity of the products after a "second level check."

CT Espresso filed this action on January 14, 2022, bringing claims for breach of contract, defamation, and trade libel. On July 5, CT Espresso filed the FAC, adding a claim for tortious interference with a contract and business relations. The case was transferred to this Court on August 17.

On September 28, this Court ruled on a pending motion and dismissed the plaintiff's three claims for defamation, trade libel, and tortious interference with a contract or business relations. Id. at *2-4. In dismissing the plaintiff's claim for defamation, the September 28 Opinion explained that defamation imposes liability for certain false statements "of and concerning" the plaintiff, whereas an action for trade libel imposes liability on false statements about the plaintiff's products of services. Id. at *2 (citation omitted). The Opinion held that Lavazza's accusations that CT Espresso's products were counterfeit denigrated only the products, and not CT Espresso. Id. at *3. Accordingly, the Opinion found that CT Espresso's claim sounded in trade libel, not defamation. Id. The Opinion found that CT Espresso had failed to state a claim for trade libel because it did not plead special damages. The plaintiff's breach of contract claim, which was not subject to the motion, remained.

On October 12, CT Espresso moved for reconsideration of the September 28 Opinion's dismissal of its claim for defamation. It does not seek reconsideration of the dismissal of the trade libel or tortious interference claim.  The defendants opposed the motion on October 28.  The motion became fully submitted on November 4.

## Discussion

I.   Defamation

The standard for granting a motion for reconsideration is "strict."  Cho v. Blackberry Ltd., 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted).  Through a motion for reconsideration though, a party may obtain relief "to correct a clear error." Id.

Under New York law, a statement "confined to denigrating the quality of [a] business' goods or services" may be actionable trade libel "only if malice and special damages are proven."  Ruder & Finn Inc. v. Searbord Sur. Co., 52 N.Y.2d 663, 670-71 (1981).  A statement is actionable as defamation, however -- even without an allegation of special damages -- if it falsely "impugns the basic integrity or creditworthiness of a business."  Celle v. Filipino Reporter Enterp. Inc., 209 F.3d 163, 180 (2d Cir. 2000) (quoting Ruder & Ginn Inc., 52 N.Y.2d at 670).

The September 28 Opinion held that Lavazza's accusations of counterfeiting spoke only to the quality of CT Espresso's products. CT Espresso LLC, 2022 WL 4538339, at *3. But CT Espresso correctly argues that an accusation of counterfeiting also sounds in defamation. This argument is appropriately presented on a motion for reconsideration; the parties did not address this issue in their briefing of the underlying motion.

Because the September 28 Opinion's basis for dismissing the defamation claim has been reconsidered, the Court must address the defendants' arguments for dismissal of the defamation claim that it had declined to consider in the September 28 Opinion. See CT Espresso LLC, 2022 WL 4538339, at *3 n.3. To state a claim for defamation under New York law, a plaintiff must allege "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." Chau v. Lewis, 771 F.3d 118, 126-27 (2d Cir. 2014). Negligence is normally sufficient to allege fault, unless the plaintiff is a public figure or public official, in which case it must allege actual malice. See Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015); Rosenberg v. Metlife, Inc., 453 F.3d 122, 123 n.1 (2d Cir. 2006).

CT Espresso has stated a claim for defamation. CT Espresso alleges that the defendants submitted complaints to Amazon

stating that CT Espresso was selling "counterfeit" Lavazza products.  This statement is defamatory per se, and CT Espresso alleges that the statement was false.  Additionally, the submission of the complaints to Amazon constitutes publication to a third party.

CT Espresso has also adequately alleged fault.  CT Espresso has alleged that Lavazza had an ongoing relationship with it, that Lavazza tested the product it had ordered from CT Espresso, that further review confirmed the product's authenticity, and that Lavazza erroneously reported to Amazon that CT Espresso was selling a counterfeit product.  These allegations are sufficient to give rise to a plausible inference that the defendants were negligent in their initial testing of the authenticity of CT Espresso's products.

The defendants nevertheless argue that CT Espresso has not stated a claim for defamation because the Amazon Complaints were protected by the litigation privilege and the Noerr-Pennington doctrine.  The defendants have not shown that either doctrine precludes CT Espresso's claim at this stage of the proceedings.

II.  Litigation Privilege

New York law provides "absolute immunity from liability for defamation . . . for oral or written statements made by attorneys in connection with a proceeding before a court when such words and writings are material and pertinent to the

6

questions involved." Front, Inc. v. Khalil, 24 N.Y.3d 713, 718 (2015) (citation omitted).  The privilege also extends to statements made during a "quasi-judicial proceeding." Herzfeld & Stern v. Beck, 572 N.Y.S.2d 683, 685 (1st Dep't 1991). Additionally, a qualified privilege attaches to statements made in anticipation of litigation, prohibiting liability unless the statements "were not pertinent to a good faith anticipated litigation." Front, Inc., 24 N.Y.3d at 720.

The defendants argue that their statements were privileged because the Amazon complaint process is a quasi-judicial proceeding.  But this privilege is "generally reserved for communications made by individuals participating in a public function, such as judicial, legislative, or executive proceedings." Stega v. N.Y. Downtown Hosp., 31 N.Y.3d 661, 669 (2018) (citation omitted).  It applies only in proceedings "having attributes similar to a court." Id. at 670 (citation omitted).  In cases in which the privilege has been applied to proceedings before non-governmental bodies, New York courts emphasized that the government delegated those organizations the task of enforcing a technical area of regulatory law. See, e.g., Herzfeld & Stern, 572 N.Y.S.2d at 685 (proceedings before the New York Stock Exchange were quasi-judicial because Federal law "established a comprehensive system of oversight and self-regulation"); Wiener v. Weintraub, 22 N.Y.2d 330, 331–32 (1968)

(proceedings before the Grievance Committee of the bar association because the bar association in its disciplinary capacity acted "as an arm of the Appellate Division.").

The FAC does not allege that the Amazon Complaint process has any such characteristics. It is not designed to administer highly regulated activity, and was not implemented to perform any governmental function. Accordingly, the FAC does not allege facts which allow Amazon's complaint process to be construed as a "quasi-judicial" proceeding to which the absolute litigation privilege would apply.

The defendants also argue that the Amazon Complaints were protected pre-litigation statements, because they were prepared in connection with anticipated litigation. The FAC, however, contains no allegations suggesting that the defendants were anticipating litigation at the time they filed the Amazon Complaints. New York courts have generally applied the pre-litigation privilege to statements made in demand letters or other communications between parties and attorneys threatening litigation. See, e.g., Front, Inc., 24 N.Y.3d at 720; Schwartz v. Chan, 75 N.Y.S.3d 31, 162 A.D.3d 408, 409 (1st Dep't 2018). No similar demands or threats of litigation have been alleged here. Accordingly, the defendants have not shown at this stage of proceedings that their statements were made in anticipation of litigation.

III. Noerr-Pennington Doctrine

The defendants argue that the Noerr-Pennington doctrine immunizes them from liability for statements made in the Amazon Complaints. The Noerr-Pennington doctrine shields defendants from liability "for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 556 (2014) (citing E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers v. Pennington, 381 U.S. 657 (1965)).[1] The doctrine also applies to "concerted efforts incident to litigation, such as prelitigation 'threat letters.'" Primetime 24 Joint Venture v. Nat'l Broadcasting, Co., 219 F.3d 92, 100 (2d Cir. 2000).

The Noerr-Pennington doctrine does not protect the statements at issue here. The doctrine protects "conduct . . . aimed at influencing decisionmaking by the government." Octane

---

[1] Although the Noerr-Pennington is potentially applicable to various forms of private litigation, it usually immunizes defendants from antitrust liability. See E. R. R. Presidents Conference, 365 U.S. at 127; but see, e.g., T.F.T.F. Capital Corp v. Marcus Dairy, Inc., 312 F.3d 90, 93-94 (2d Cir. 2002) (finding that the "sham litigation" exception to the Noerr-Pennington doctrine could apply when the original action involved a dispute over debt payments). Because the doctrine regardless does not apply here, it is unnecessary to consider whether the Noerr-Pennington doctrine could, under some circumstances, be extended to prevent liability for defamation. For the same reason, it is not necessary to consider whether the "sham litigation" exception to the Noerr-Pennington doctrine applies.

Fitness, LLC, 572 U.S. at 556.  It is derived from the "First Amendment right to petition the government for a redress of grievances."  Id.  Amazon, of course, is not a governmental entity, and the defendants' attempts to influence Amazon's decisionmaking cannot reasonably be characterized as an attempt to influence the government's decisionmaking.

Nevertheless, the defendants argue that the Noerr-Pennington doctrine applies because it has been extended to "prelitigation threat letters" and statutorily prescribed prelitigation dispute processes.  See Primetime 24 Joint Venture, 219 F.3d at 100 (holding that the Noerr-Pennington doctrine protects challenges to a satellite television provider's signal strength made pursuant to the satellite Home Viewer Act, 17 U.S.C. § 119).  As alleged in the FAC, however, Amazon's complaint process is not analogous to such activity.  The process is not prescribed by statute as a necessary prelude to a legal action, and the FAC does not allege that the parties used it as a precursor to litigation.  Accordingly, Noerr-Pennington's protection of petitioning activity does not extend to the filing of the Amazon Complaints.

## **Conclusion**

CT Espresso's October 12 motion for reconsideration is granted, and its claim for defamation is reinstated.

Dated: New York, New York
November 22, 2022

_____
DENISE COTE
United States District Judge